# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| MATTEL, INC. AND FISHER-PRICE, INC., | ) ) ) |
| | ) C.A. No. N23C-01-042 MAA CCLD |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| XL INSURANCE AMERICA, INC. ACE PROPERTY AND CASUALTY INSURANCE CO.; ACE AMERICAN INSURANCE CO.; STARR INDEMNITY & LIABILITY CO.; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; GREAT AMERICAN ASSURANCE CO.; AMERICAN GUARANTEE AND LIABILITY CO.; ASPEN INSURANCE UK, LTD.; ENDURANCE RISK SOLUTIONS ASSURANCE CO., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

Submitted: February 28, 2025
Decided: March 28, 2025

## MEMORANDUM OPINION

Great American's Motion for Partial Summary Judgment:
**GRANTED** in part, **DENIED** in part, **RESERVED** in part.

Aspen's Motion for Partial Summary Judgment:
**DENIED**.

Mattel's Motion for Summary Judgment:
**GRANTED** in part, **DENIED** in part, **RESERVED** in part.

1

National Union's Motion for Summary Judgment:
**RESERVED**.

Chubb's Motion for Summary Judgment:
**GRANTED** in part, **DENIED** in part, **RESERVED** in part.

Jennifer C. Wasson, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE, and Michael J. O'Connor, Esquire, and Ken D. Kronstadt, Esquire (Argued) of VENABLE LLP, Los Angeles, CA, *Attorneys for Plaintiffs.*

John D. Balaguer, Esquire of BALAGUER, MILEWSKI & IMBROGNO LLP, Wilmington, DE, and Karen M. Dixon, Esquire (Argued) of SKARZYNSKI MARICK & BLACK LLP, Chicago, IL, *Attorneys for American Guarantee and Liability Insurance Company.*

Kelly E. Rowe, Esquire of CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE, and Michael J. Smith, Esquire (Argued) of STEWART | SMITH, West Conshohocken, PA, *Attorneys for Aspen Insurance UK, Ltd.*

Garrett B. Moritz, Esquire of ROSS ARONSTAM & MORITZ LLP, Wilmington, DE, and Michael S. Shuster, Esquire, Blair E. Kaminsky, Esquire (Argued), Daniel M. Horowitz, Esquire and Byron J. Hazzard, Esquire of HOLWELL SHUSTER & GOLDBERG LLP, New York, NY, and Meghan C. Goodwin, Esquire of CLYDE & CO US LLP, Morristown, NJ, *Attorneys for ACE American Insurance Company and ACE Property and Casualty Insurance Company (Chubb)*

Louis J. Rizzo, Jr., Esquire of REGER RIZZO & DARNALL LLP, Wilmington, DE, and Michael O. Kassak, Esquire (Argued) of WHITE AND WILLIAMS LLP, Cherry Hill, NJ, *Attorneys for Endurance Risk Solutions Assurance Co.*

Richard M. Beck, Esquire of KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, DE, and James P. Ruggeri, Esquire (Argued) and Sara K. Hunkler, Esquire of RUGGERI PARKS WEINBERG LLP, Washington, D.C., *Attorneys for Great American Assurance Company.*

Robert J. Cahall, Esquire of MCCORMICK & PRIORE, P.C., Wilmington, DE, and Alan R. Lyons, Esquire (Argued) of HERRICK, FEINSTEIN LLP, New York, NY, *Attorneys for National Union Fire Insurance Company of Pittsburgh, Pa.*

Kevin S. Mann, Esquire of CROSS & SIMON, LLC, Wilmington, DE, and Jeff Bowen, Esquire (Argued) of LINDEMANN MILLER BOWEN LLP, Chicago, IL, *Attorneys for Starr Indemnity & Liability Company.*

Lauren A. Ferguson, Esquire of SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE, and Samantha J. Wenger of DENTONS US LLP, Chicago, IL, *Attorneys for XL Insurance America, Inc.*

**Adams, J.**

## I. INTRODUCTION

This action presents an insurance coverage dispute that is counterpart to various products liability actions. The parties have filed motions for summary judgment, asking this Court to determine how Mattel, Inc. and Fisher Price, Inc.'s liability for those products liability actions should be allocated across nine years of CGL insurance coverage towers.

The Court finds the products liability claims constitute a single "occurrence" under the relevant policies, that the products liability claims should be allocated by the year in which the injury occurred for those policies above the primary level, and Great American Assurance Company ("Great American") has a duty to defend Mattel, Inc. and Fisher Price, Inc. for claims allocated to 2013. This is the Court's decision on the parties' motions for summary judgment.

1

## II.     FACTS[1]

### A. The Parties[2]

Mattel, Inc. and Fisher Price, Inc. (collectively "Mattel") are Delaware corporations that manufacture and distribute toys and other children's products.[3] From 2011-2020, each of the Insurers[4] issued at least one CGL insurance policy covering Mattel for third-party claims alleging bodily injury.[5]

### B. The Insurance Policies

This lawsuit only concerns insurance policies from 2011-2020.[6] The following coverage chart illustrates the structure of Mattel's CGL coverage towers for the relevant policy years:[7]

---

[1] The Court notes the consequence of both sides filing motions is that facts repeat in briefing. When the Court cites one party's brief instead of another's, the Court intends to imply no preference or priority to any party. The Court merely provides a citation to the record for the fact; other citations may provide the same information, but the Court will not cite every part of the record where the information can be found. Citations to the transcript of the February 7, 2025, hearing addressing the Motions for Summary Judgment are in the form "Tr. #".

[2] The Court refers to all of the Plaintiffs and Defendants as the "Parties."

[3] Am. Compl. at ¶¶ 5-6 (D.I. 86).

[4] The Court will refer to all the Defendants as the "Insurers." The Insurers consist of Ace Property and Casualty Insurance Company ["ACE P&C"]; ACE American Insurance Company ["ACE" and, together with ACE P&C "Chubb"]; National Union Fire Insurance Company of Pittsburgh, PA ["National Union"]; Starr Indemnity and Liability Company ["Starr"]; Great American Assurance Company ["Great American"]; American Guarantee and Liability Company ["AGLIC"]; Aspen Insurance UK Limited ["Aspen"]; Endurance Risk Solutions Assurance Company ["Endurance"]; and XL Insurance America, Inc. ["XL"].

[5] Def. Great American's Opening Br. in Supp. of Mot. for Partial Summ. J. ["GA MSJ"] Ex. 76 (D.I. 550).

[6] *Id*. The Court refers to the relevant policies altogether as the "Policies."

[7] *Id*.

2

## Fisher-Price/Mattel Insurance Chart

| | 2011-12 | 2012-13 | 2013-14 | 2014-15 | 2015-16 | 2016-17 | 2017-18 | 2018-19 | 2019-20 |
|---|---|---|---|---|---|---|---|---|---|
| **5th Excess ($25M)** | Chartis | Chartis | Chartis | Chartis | Chartis | Argo Re | Chubb Bermuda | Chubb Bermuda | Chubb Bermuda |
| **4th Excess ($75M quota share)** | Iron-Starr Excess ($25M) | Iron-Starr Excess ($25M) | Iron-Starr Excess ($25M) | Iron-Starr Excess ($25M) | Iron-Starr Excess ($25M) | Iron-Starr Excess ($25M) | Iron-Starr Excess ($25M) | Iron-Starr Excess ($25M) | Liberty Specialty ($25M) |
| | | | | | | | | | Everest ($25M) |
| | Aspen Ins. UK Ltd. ($50M) | Aspen Ins. UK Ltd. ($50M) | Aspen Ins. UK Ltd. ($50M) | Aspen Ins. UK Ltd. ($50M) | Aspen Ins. UK Ltd. ($50M) | Aspen Ins. UK Ltd. ($50M) | Aspen Ins. UK Ltd. ($50M) | Aspen Ins. UK Ltd. ($50M) | Aspen Ins. UK Ltd. ($25M) |
| **3rd Excess ($25M)** | Am. Guar. & Liab. Ins. Co. | Am. Guar. & Liab. Ins. Co. | Am. Guar. & Liab. Ins. Co. | Am. Guar. & Liab. Ins. Co. | Endurance Risk Solusions Assur. Co. | Endurance Risk Solusions Assur. Co. | Endurance Risk Solusions Assur. Co. | Endurance Risk Solusions Assur. Co. | Endurance Risk Solusions Assur. Co. |
| **2nd Excess ($25M)** | Great Am. Assur. Co. | Great Am. Assur. Co. | Great Am. Assur. Co. | Great Am. Assur. Co. | Great Am. Assur. Co. | XL Ins. Am., Inc. | XL Ins. Am., Inc. | XL Ins. Am., Inc. | XL Ins. Am., Inc. |
| **1st Excess above Umbrella ($25M)** | Starr Indem. & Liab. Co. | Starr Indem. & Liab. Co. | Starr Indem. & Liab. Co. | Starr Indem. & Liab. Co. | Starr Indem. & Liab. Co. | Starr Indem. & Liab. Co. | Starr Indem. & Liab. Co. | Starr Indem. & Liab. Co. | Starr Indem. & Liab. Co. |
| **Umbrella XOO ($25M; $2M Corridor Retention) xs $2MM** | Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. | ACE Prop. & Cas. Ins. Co. | ACE Prop. & Cas. Ins. Co. | ACE Prop. & Cas. Ins. Co. | ACE Prop. & Cas. Ins. Co. | ACE Prop. & Cas. Ins. Co. | ACE Prop. & Cas. Ins. Co. | ACE Prop. & Cas. Ins. Co. | ACE Prop. & Cas. Ins. Co. |
| **1st Layer XSL ($1.75M / $8M agg.; $250K per occurrence Retained Limit)** | ACE American Ins. Co. | ACE American Ins. Co. | ACE American Ins. Co. | ACE American Ins. Co. | ACE American Ins. Co. | ACE American Ins. Co. | ACE American Ins. Co. | ACE American Ins. Co. | ACE American Ins. Co. |

### 1. The Primary Policies

From 2011-2020, Chubb issued Mattel's Primary Policies.[8] "Each has a Retained Limit of $250,000 per occurrence and limits of liability above that for bodily injury within the 'products-completed operations hazard' of $1.75 million per occurrence and $8 million in the aggregate."[9] The Primary Policies are fronting policies; Mattel is responsible for all defense and indemnity costs within the Primary Policies' limits.[10] The Primary Policies apply to damages Mattel must pay

---

[8] Mattel's Opening Br. in Supp. of their Mot. for Summ. J. on Count I of the Am. Compl. at 7 (D.I. 553) ["Mattel MSJ"]. The Court refers to the first layer insurance policies in each policy year as the "Primary Policies."

[9] GA MSJ at 3.

[10] *Id.* At the Primary Policy level, indemnification of Mattel is ultimately the responsibility of a Mattel subsidiary known as Far West Insurance. Tr. 9:23-10:3.

3

because of bodily injury caused by an "occurrence."[11] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[12]

The definition of "occurrence" is supplemented by the Lot or Batch Clause Endorsement ("LBC"). The LBC contains a "Deemer Clause," which deems all injuries arising out of one "lot" of products to occur whenever the injury in the first filed claim occurred.[13] The language of the LBC is as follows:[14]

> Any "bodily injury" or "property damage" that:
> A. Is included in the "products-completed operations hazard"; and
> B. Arises out of any one "lot" of "your product" that is prepared or acquired by you;
> shall be considered as a single "occurrence". All such "bodily injury" or "property damage" that arises out of such "lot" shall be deemed to occur when the "bodily injury" or "property damage" occurs for the first claim arising out of such "lot", or February 1, 2011, whichever date is later.
> For the purpose of this endorsement, a "lot" means two (2) or more discrete units of the same or substantially similar good or product prepared or acquired by you that are subject to substantially the same general harmful condition, defect, error or suspected deficiency.

The Primary Policies define "products-completed operations hazard" ("PCOH") to include all bodily injury caused by finished products shipped to consumers and no longer in Mattel's possession.[15]

---

[11] *See, e.g.*, Joint Policy App. ["JPA"] First Layer Policy Ex. 5 (Part 1 of 2) at ACE-RNP00015491 (D.I. 517). The Court refers to any documents in the JPA as "JPA Ex #".
[12] *Id*. at ACE-RNP00015508.
[13] *See, e.g., id.* at ACE-RNP00015549.
[14] *Id*.
[15] *See, e.g., id.* at ACE-RNP00015508-15509.

## 2. The Umbrella Policies

The "Umbrella Policies" are the second layer in Mattel's 2011-2020 insurance towers, and the first layer of true indemnification coverage. National Union provided the Umbrella Policy for the 2011-2012 policy year.[16] Chubb provided the Umbrella Policies for 2012-2020.[17]

The Umbrella Policies include Corridor Retention Endorsements, providing for a corridor retention of $2,000,000 per "occurrence" defined as "that amount…that applies after the erosion or exhaustion of any applicable per occurrence limit of insurance as listed on any Scheduled 'Underlying Insurance,' any 'other insurance,' or any 'insured's retained amount' and before [the Umbrella Policy] will respond."[18]

For National Union's 2011 Umbrella Policy, the corridor retention may not be eroded by Mattel's payment of defense expenses.[19]

The Chubb Umbrella Policies also contain Trailing Retention Endorsements.[20] The Trailing Retention Endorsements include the following language:[21]

> If the aggregate limits of liability under any "underlying insurance" are reduced or exhausted solely by reason of "loss" paid thereunder arising out of "bodily injury," "personal and advertising injury," or "property

---

[16] GA MSJ Ex. 76.
[17] *Id.*
[18] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000886 (D.I. 537).
[19] JPA Ex. 17 at NATIONALUNION_0001924 (D.I. 535).
[20] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000873.
[21] *Id.*

5

damage" which takes place during our "policy period," then this policy shall:

1. In the event of reduction, pay the excess of the reduced underlying limit; but only in excess of the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.
2. In the event of exhaustion continue in force as "underlying insurance," but only for any excess above the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

The "trailing retention" is defined as $250,000.[22] The "aggregate trailing retention" is defined as "N/A."[23]

Like the Primary Policies, the Umbrella Policies cover damages Plaintiffs must pay because of bodily injury caused by an "occurrence."[24] The definition of "occurrence" is similar to that in the Primary Policies,[25] and is supplemented by the Occurrence Amendatory Endorsement ("OAE"), which, like the LBC, aggregates distinct claims arising from the same alleged defect or hazard in substantially similar products into one "occurrence."[26]

The National Union 2011-2012 Umbrella Policy OAE reads as follows: [27]

Notwithstanding anything to the contrary in this policy or endorsements, the following damages shall be deemed to *arise out of* a single Occurrence, regardless of the number of claimants:

---

[22] *Id*.
[23] *Id*.
[24] *Id*. at ACE-RNP00000827.
[25] *Id*. at ACE-RNP00000843.
[26] JPA Ex. 19 at ACE-RNP00000887.
[27] JPA Ex. 17 at NATIONALUNION_0001921 (emphasis added).

1) All Bodily Injury or Property Damage included within the Products-Completed Operations Hazard arising out of the same accident caused by one (1) or more of Your Product(s) or Your Work, or

2) All Bodily Injury or Property Damage included within the Products-Completed Operations Hazard arising out of two (2) or more discrete units of the same or substantially similar Your Products, but only if such Bodily Injury or Property Damage results from the same conduct, cause, hazard, defect, or any combination thereof.

The definition clause for "occurrence" in the 2012-2017 Chubb Umbrella Policies follows a different structure compared to that of the 2011-2012 National Union Umbrella Policy. Incorporating the OAE, the 2012-2017 definition of "occurrence" reads as follows:[28]

O. "Occurrence" means:
1. With respect to "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence," regardless of the frequency or repetition thereof, or the number of claimants.
2. With respect to "personal and advertising injury," a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence," regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.
3. All "bodily injury" or "property damage" included within the "products-completed operations hazard" arising out of two (2) or more discrete units of the same or substantially similar "your products" but only if all such "bodily injury" or "property damage" results from the

[28] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000843 & 887.

7

same conduct, cause, hazard, defect, failure to warn or instruct or any combination thereof.

The definition of "occurrence" and the OAE were restructured in 2017. The version of the OAE from the 2017-2018 Chubb Umbrella Policy onward includes the following language:[29]

> O. "Occurrence" means:
> 1. With respect to "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>> a. Solely with respect to "bodily injury" or "property damage" that is both (1) included within the "products-completed operations hazard," and (2) arising out of two or more discrete units of the same or substantially similar "your products," all such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence," regardless of the frequency or repetition thereof, or the number of claimants, but only if all such "bodily injury" or "property damage" results from substantially the same conduct, cause, hazard, or defect.
>> b. With respect to all other "bodily injury" or "property damage," all such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.
> 2. With respect to "personal and advertising injury," a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence," regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

---

[29] *See, e.g.*, JPA Ex. 23 at ACE-RNP00021444 (D.I. 541).

The Umbrella Policies define PCOH in the same way as the Primary Policies: the PCOH includes all bodily injury caused by finished products shipped to consumers and no longer in Mattel's possession.[30]

Unlike the LBC, the OAE lacks a Deemer Clause or a similar provision which would allocate one multi-injury "occurrence" into a particular policy year.[31]

National Union's 2011 Umbrella Policy contains an endorsement which disclaims coverage for any liability arising out of the PCOH, unless the underlying 2011 Primary Policy covers said liability (the "PCOH Endorsement"):

> Coverage under this policy for [PCOH] liability will follow the terms, definitions, conditions and exclusions of the [2011 Primary Policy] subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by [the 2011 Primary Policy].[32]

For this action, the only relevant National Union Umbrella Policy is a Policy for 2011-2012.[33]

*3. The Excess Policies*

The "Excess Policies" include all the policies which sit above the Umbrella Policies' level. The Excess Policies generally "follow form" to the Umbrella Policy in their respective policy year.[34]

---

[30] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000844.
[31] *Id.* at ACE-RNP00000887.
[32] JPA Ex. 17 at NATIONALUNION_0001915.
[33] GA MSJ Ex. 76.
[34] Mattel MSJ at 10; *See, e.g.*, Mattel MSJ Ex. 64 at MAT-FP-DECOV0001226.

9

Great American's 2013 Excess Policy contains a disclaimer of any duty to defend.[35] Great American's 2013 Excess Policy also contains a Following Form Coverage Endorsement.[36] Under the Following Form Coverage Endorsement, Great American's 2013 Excess Policy follows form to the 2013 Chubb Umbrella Policy (which contains a duty to defend),[37] subject to nine items from Great American's Excess Policy that supersede the terms of the Chubb Umbrella Policy.[38] Those nine items are the Limits of Insurance, Policy Period, Premium, Schedule of Underlying Insurance, Pollution Exclusion, Asbestos Exclusion, Nuclear Energy Liability Exclusion, any other exclusion agreed upon by the parties to the 2013 Great American Excess Policy, and the Cancellation provision.[39]

AGLIC's 2013 Excess Policy follows the terms of the underlying 2013 Chubb Umbrella Policy "[e]xcept as otherwise provided by this policy."[40] The 2013 AGLIC Excess Policy disclaims any duty to defend.[41]

AGLIC's 2013 Excess Policy contains a Qualified Entity Endorsement.[42] The Qualified Entity Endorsement replaces the duty to defend disclaimer for insured

---

[35] GA MSJ Ex. C at GAAC006893.
[36] *Id*. at GAAC006884.
[37] JPA Ex. 19 at ACE-RNP00000829.
[38] GA MSJ Ex. C at GAAC006884.
[39] *Id*.
[40] Aff. of Karen M. Dixon in Supp. of Def. AGLIC's Joinder to GA MSJ ["Dixon Aff."] Ex. A at MAT-FP-DECOV0001243 (D.I. 580).
[41] Dixon Aff. Ex. A at MAT-FP-DECOV0001244.
[42] *Id*. at MAT-FP-DECOV0001255.

10

entities that have ongoing operations in "non-admitted jurisdictions."[43]   The replacement language provides, "[AGLIC] will not assume any duty with respect to the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against any insured in non-admitted jurisdictions."[44]  "Non-admitted jurisdictions" is a defined term, meaning "any country or political subdivision in which [AGLIC is] not authorized to insure risks and where doing so would violate the insurance laws and regulations of such jurisdiction."[45]

Aspen's 2013 Excess Policy sits above Great American's 2013 Excess Policy.[46]  Aspen's 2013 Excess Policy generally "follows form" to the 2013 Chubb Umbrella Policy,[47] but adopts any language from the underlying Policies which would limit coverage (the "Restrictive as Underlying Clause").[48]

## C. The Rock-N-Play Sleeper Lawsuits

Mattel has been sued in various products liability lawsuits across the Country (the "RNPS Claims"), which generally allege that infants suffered bodily injury or death while using a Rock n' Play Sleeper ("RNPS") product.[49]  In each of the RNPS Claims, the claimants allege design defects in the RNPS product line made the

---

[43] *Id.*
[44] *Id.*
[45] *Id.* at MAT-FP-DECOV0001256.
[46] GA MSJ Ex. 76.
[47] Def. Aspen's Opening Br. in Supp. of the Mot. for Partial Summ. J. ["Aspen MSJ"] Ex. A at AONMATTEL-0002032 (D.I. 551).
[48] *Id.* at AONMATTEL-0002033.
[49] Mattel MSJ at 18.

11

products "unsafe for periods of unsupervised sleep by infants."[50]  The first RNPS Claim alleged bodily injury which occurred in 2013.[51]

## III.  PROCEDURAL HISTORY

Mattel filed their Complaint on January 6, 2023, seeking a declaratory judgment regarding whether the Insurers were obliged to defend and indemnify Mattel in connection with the RNPS Claims.[52]  Mattel filed an Amended Complaint on March 15, 2023, clarifying the defendants and adding causes of action, among other revisions.[53]

Mattel filed a Motion for Partial Summary Judgment, seeking a declaration that Chubb has a present and ongoing duty to defend Mattel in the RNPS Claims, as well as a duty to indemnify for the same.[54]  The Court heard oral argument on Mattel's Motion for Partial Summary Judgment on August 21, 2023 and granted the Motion on the record, finding California law clearly established Chubb's continuing obligation to defend Mattel in the RNPS Claims.[55]

---

[50] *Id.*; Great American's Br. in Opp. to Mattel's Mot. for Summ. J. at 28 (D.I. 629) ["GA Resp. to Mattel"].

[51] Mattel MSJ at 19.

[52] Compl. ¶ 1 (D.I. 1).

[53] Am. Compl.

[54] Mattel's Opening Br. in Supp. of their Mot. for Partial Summ. J. on Count IV of the Compl. (D.I. 100).

[55] Jud. Action Form for Mattel's Mot. for Partial Summ. J. heard before The Hon. J. Adams on Aug. 21, 2023 (D.I. 151).  The Court determined California law governs this dispute.  *Mattel, Inc. v. XL Ins. Am., Inc.*, 2023 WL 6148203, at *1 (Del. Super. Sept. 20, 2023); Tr. of Civ. Mot. Hearing held on Monday, Aug. 21, 2023 at 58:8-14 (D.I. 196); GA MSJ at 15; Mattel MSJ at 20; Chubb's Opening Br. in Supp. of its Mot. for Partial Summ. J. on Allocation Issues at 20 (D.I. 564) ["Chubb MSJ"].

Mattel, Chubb, Great American, National Union, and Aspen filed motions for partial summary judgment on December 10, 2024.[56] The Insurers seek various declarations regarding which of Mattel's 2011-2020 insurance Policies are implicated by the RNPS Claims. On December 13 and 16, 2024, Starr, Endurance, AGLIC, and XL each filed joinders to either Chubb or Great American's motions for partial summary judgment.[57] On January 15, 2025, the Parties filed response briefs and joinders to response briefs.[58] On January 31, 2025, the Parties filed reply briefs and joinders to reply briefs.[59] The Court heard oral argument regarding the various motions on February 7, 2025.[60]

After oral argument, the Court requested supplemental briefing regarding the Policies' definition of "occurrence."[61] Great American filed a Response to the Court's request for supplemental briefing on February 19, 2025.[62] Several Insurers

---

[56] Mattel MSJ; Chubb MSJ; GA MSJ; Opening Br. of National Union in Supp. of Mot. for Summ. J. (D.I. 562) ["National Union MSJ"]; Aspen MSJ.

[57] Starr's Joinder to GA MSJ (D.I. 582); Def. Endurance's Partial Joinder to Chubb MSJ and Alt. Partial Joinder to GA MSJ (D.I. 584); AGLIC's Joinder to GA MSJ (D.I. 579) ["AGLIC Joinder"]; Def. XL's Joinder, In Part, to Certain Mots. for Partial Summ. J. Re. Allocations (D.I. 586).

[58] D.Is. 612, 614, 616-630.

[59] D.Is. 639-648. Aspen filed Aspen's Joinder to Great American's Reply in Supp. of Partial Summ. J. (D.I. 653) on February 3, 2025. On February 4, 2025, Mattel filed Mattel's Suppl. Resp. to AGLIC's Joinder Mot. for Summ. J. (D.I. 656) ["Mattel Suppl. Resp. to AGLIC"]. AGLIC filed AGLIC's Reply to Mattel's Suppl. Resp. to AGLIC's Joinder for Partial Summ. J. (D.I. 659) on February 5, 2025.

[60] JAF Form for 2-7-2025 (D.I. 665).

[61] Post-Oral Arg. Letter to Couns. from J. Adams Dated Feb. 10, 2025 (D.I. 667).

[62] Def. Great American's Resp. to Feb. 10, 2025 Questions from the Ct. (D.I. 685) ["GA Resp. to Letter"].

13

filed joinders to Great American's Response on February 20, 2025.[63]   Mattel, National Union, and Chubb filed oppositions to Great American's Response on February 28, 2025.[64]

## IV.   STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if…there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law."[65]  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[66]  The moving party bears the burden of showing the undisputed facts support its position.[67]  The burden then shifts to the nonmoving party to "show that there are material issues of fact the ultimate fact-finder must resolve."[68]  A court will not grant summary judgment if "it appears that there is a material fact in dispute or that further inquiry into the facts

---

[63] Def. AGLIC's Joinder to GA Resp. to Letter (D.I. 687); Starr's Joinder to GA Resp. to Letter (D.I. 689); Aspen's Joinder to GA Resp. to Letter (D.I. 691).

[64] National Union's Partial Opp. to GA Resp. to Letter (D.I. 693) ["National Union Resp. to Letter"]; Chubb's Resp. to Feb. 10, 2025 Questions from the Ct. and GA Resp. to Letter (D.I. 694) ["Chubb Resp. to Letter"]; Mattel's Resp. to Feb. 10, 2025 Questions from the Ct. (D.I. 695) ["Mattel Resp. to Letter"].

[65] Super. Ct. Civ. R. 56(c).

[66] *Gateway Ests., Inc. v. New Castle Cty.*, 2015 WL 13145613, at *13 (Del. Super. Sept. 19, 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[67] *Olga J. Nowak Irrev. Tr. v. Voya Fin'l Inc.*, 2020 WL 7181368, at *3 (Del. Super. Nov. 30, 2020) (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

[68] *Id.*  (citing *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995)).

14

would be appropriate."[69]  The moving party's claim must be "based on more than mere speculation."[70]

"[W]here the parties have filed cross-motions for summary judgment, as here, the standard for summary judgment 'is not altered.'"[71]  If "neither party argues the existence of a genuine issue of material fact, 'the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the[m].'"[72]  Even when cross-motions are filed, if "an issue of material fact exists, summary judgment is not appropriate."[73]  Interpretation of an insurance policy is a matter of law which is appropriately resolved on summary judgment.[74]

[69] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962)).

[70] *Pazuniak L. Off., LLC v. Pi-Net Int'l, Inc.*, 2016 WL 3916281, at *2 (Del. Super. July 7, 2016).

[71] *Capano*, 2013 WL 2724634, at *2 (quoting *Total Care Phys., P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. 2001)) (internal quotation marks omitted).

[72] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *4 (Del. Super. Oct. 28, 2020) (quoting Super. Ct. Civ. R. 56(h)).

[73] *Motors Liquid. Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. June 8, 2017) (citing *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1029 (Del. Ch. 2008)).

[74] *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Stonewall Ins. Co.*, 2009 WL 1915212 (Del. Super. June 30, 2009), *aff'd*, 996 A.2d 1254 (Del. 2010); *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995), *as modified on denial of reh'g* (Oct. 26, 1995) ("interpretation of an insurance policy is a question of law." (citing *AIU Ins. Co. v. Superior Ct.*, 799 P.2d 1253, 1261 (Cal. 1990)).

## V. DISCUSSION

### A. For the issues resolved in this Opinion, the Court will not rely on deposition testimony.

As a preliminary matter, the Court determines, as a matter of law, that the Court will rely solely on the insurance contract at issue and will not consider extrinsic evidence. Under California law, courts strive to interpret contracts based on the mutual intention of the parties at the time of the contract's formation.[75] "Such intent is to be inferred, if possible, solely from the written provisions of the contract."[76] "If contractual language is clear and explicit, it governs."[77]

For the issues resolved by this Opinion, the Court relies solely on the language of the Policies. The Court will not rely on deposition testimony to provide factual conclusions where a contractual ambiguity exists. If an examination of the plain language is insufficient to determine the intent of the Parties, the Court will leave factual determinations for the upcoming jury trial in this case.[78]

---

[75] *Waller*, 900 P.2d at 627 (citing Cal. Civ. Code § 1636).
[76] *Id* (citing Cal. Civ. Code § 1639).
[77] *Montrose Chem. Corp. v. Super. Ct. of Los Angeles Cty.*, 460 P.3d 1201, 1210 (2020), *as modified* (May 27, 2020).
[78] *Motors Liquid. Co.*,2017 WL 2495417, at *5 ("Summary judgment will not be granted if there is a material fact in dispute or if 'it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances.'" (quoting *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962))).

## B. The RNPS Claims constitute one "occurrence" under the Policies.

Mattel and Chubb agree that the RNPS Claims should all be batched into a single "occurrence" under the terms of the Primary, Umbrella, and Excess Policies.[79] Great American argues the Court cannot yet determine whether there is one or many "occurrences" under the terms of the Policies.[80]

The Primary Policies' LBC provides that any bodily injury which is (1) included in the PCOH and (2) arises out of any two or more discrete units of the same or substantially similar good or product shall be considered a single "occurrence" if (3) the bodily injury results from substantially the same hazard.[81] The Umbrella Policies' OAE provides virtually identical "batching" language, but provides that the hazard shared among the units of the same product must be "the same," not just "substantially the same."[82]

The RNPS line of products are part of the PCOH. The Primary Policies provide that a product is part of the PCOH once a product is in the hands of consumers.[83] The Umbrella Policies provide the same.[84] It is undisputed that any

---

[79] Mattel MSJ at 21; Chubb MSJ at 22.
[80] GA Resp. to Letter at 4.
[81] *See, e.g.*, JPA Ex. 5 at ACE-RNP00015549.
[82] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000887.
[83] *See, e.g.*, JPA Ex. 5 at ACE-RNP00015508 & 15585.
[84] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000844.

injuries caused by the RNPS products occurred after the RNPS products were in the hands of consumers, not Mattel.[85]

The RNPS products are all the same or substantially similar, as they are all part of the same product line with the same design features.[86]

Great American argues the Court cannot determine whether the RNPS Claims arose out of the same defects in the RNPS product line.[87] Great American contends the Court must be able to find the proximate causation for the injuries alleged in the RNPS Claims before it may determine the number of "occurrences."[88]

Mattel counters that every RNPS Claim alleges a similar product defect: the incline angle of the RNPS.[89] Mattel explains that the Policies use the phrase "results from," which does not mandate a finding of proximate cause.[90] As Mattel notes, many of the RNPS Claims have settled, meaning there will never be a finding on proximate cause in those cases.[91]

---

[85] Mattel MSJ at 22.

[86] *Id*. at 23.

[87] GA Resp. to Letter at 4.

[88] *Id*. at 8 (citing *Evanston Ins. Co. v. Ghillie Suits.com, Inc.*, 2009 WL 734691, at *6 (N.D. Cal. Mar. 19, 2009)).

[89] Mattel Resp. to Letter at 8.

[90] *Id*. at 6 ("the phrase 'results from' requires only 'a minimal causal connection or incidental relationship' – not proximate causation" (citing *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal.App.4th 321, 328 (1999))); *See also Mosley v. Pac. Specialty Ins. Co.*, 49 Cal. App. 5th 417, 424 (2020), *as modified on denial of reh'g* (June 24, 2020) ("The term 'resulting from' 'broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.'" (citations omitted)).

[91] Mattel Resp. to Letter at 6 n. 10.

The Court finds the RNPS Claims all arose out of the same or substantially the same "hazard": the defective design of the RNPS products, including the incline angle, posed a hazard to the health of infants. The Court is not convinced a finding on the proximate cause for the injuries alleged in the RNPS Claims is necessary or feasible before the Court determines the number of "occurrences." The RNPS Claims allege injuries resulting from the hazards shared by the RNPS product line. The RNPS products are part of the PCOH, are substantially similar (they are in the same product line), and share common hazards. This satisfies the definition of a single "occurrence."

**C. Great American presents the correct coverage allocation method.**

Mattel, Chubb, and Great American each present a different method of coverage allocation for the RNPS Claims. The dispute centers around the allocation of claims at the Umbrella and Excess Policy levels. Mattel argues the absence of a Deemer Clause in the OAE enables Mattel to access "any and all" of the Umbrella and Excess Policies, across several policy years, to satisfy liability incurred from the RNPS Claims.[92] Chubb contends the RNPS Claims should be batched into the 2013 policy year through the Umbrella and Excess levels.[93] Great American argues the RNPS Claims should be split up and allocated to the policy year in which the

---

[92] Mattel MSJ at 27-28.
[93] Chubb MSJ at 23.

claimant's bodily injury actually occurred, because the OAE lacks a Deemer Clause.[94]  The Court finds that Great American's position is correct.

*1.  Mattel invokes California "uber-policy" law, which is inapplicable.*

Mattel contends the RNPS Claims allege "continuous losses stemming from one continuous 'occurrence,'" enabling the application of California's all-sums-with-stacking allocation rule.[95]  Mattel invokes the Supreme Court of California's decisions in *Montrose Chemical Corp. v. Admiral Insurance Co. ("Montrose I")*,[96] *State of California v. Continental Insurance Co.*,[97] and *Montrose Chemical Corp. v. Superior Court of Los Angeles County ("Montrose II")*.[98]

In *Montrose I*, the Supreme Court of California explained that "bodily injury and property damage that is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods."[99]

---

[94] GA MSJ at 14.

[95] Mattel MSJ at 28.

[96] 913 P.2d 878 (Cal. 1995).  While there are several Supreme Court of California cases concerning Montrose Chemical Corp., for purposes of this opinion, the Court refers to this 1995 case as "*Montrose I.*"

[97] 281 P.3d 1000 (Cal. 2012).

[98] 460 P.3d at 1201.  While there are several Supreme Court of California cases concerning Montrose Chemical Corp., for purposes of this opinion, the Court refers to this 2020 case as "*Montrose II.*"

[99] 913 P.2d at 880.  The underlying claims in *Montrose I* concerned property damage caused by the disposal of toxic waste.  *Id*. at 881-882.

In *Continental*, the Supreme Court of California employed the "all-sums-with-stacking" allocation model for long-tail injury cases.[100] A "long-tail" injury "is characterized as a series of indivisible injuries attributable to continuing events without a single unambiguous 'cause.'"[101] For "long-tail" injuries, the "all-sums-with-stacking" allocation model:

> effectively stacks the insurance coverage from different policy periods to form one giant "uber-policy" with a coverage limit equal to the sum of all purchased insurance policies. Instead of treating a long-tail injury as though it occurred in one policy period, this approach treats all the triggered insurance as though it were purchased in one policy period.[102]

The "all-sums-with-stacking" allocation model thus grants the policyholder "far more insurance than it would ever be entitled to within any one period."[103]

In *Montrose II*, the Supreme Court of California implemented a further-expanded "all-sums-with-stacking" rule, enabling a policy holder to access "coverage under any excess policy [in an uber-policy] once it has exhausted directly underlying excess policies for the same policy period."[104]

---

[100] 281 P.3d at 1009. *Continental* concerned the State of California's "federal court-ordered cleanup" of the Stringfellow Acid Pits waste site, and the costs incurred therein. *Id*. at 1002.

[101] *Id*. at 1005.

[102] *Id*. at 1008 (citing Rebecca M. Bratspies, *Splitting the Baby: Apportioning Environmental Liability Among Triggered Insurance Policies*, 1999 B.Y.U. L. Rev. 1215, 1245 (1999)) (cleaned up).

[103] *Id*. (citing Bratspies, *supra* note 102, at 1245).

[104] 460 P.3d 1203. *Montrose II* concerned the same injury as *Montrose I*. The issue presented in *Montrose II* was the sequence in which Montrose Chemical Corp. may access its excess insurance policies." *Id*.

Mattel's invocation of the *Montrose* line of cases is ineffective. The "all-sums-with-stacking" rule applies to cases which allege a "long-tail" injury, as defined in *Continental*.[105] The RNPS Claims do not allege "a series of indivisible injuries attributable to continuing events without a single unambiguous 'cause.'"[106] Long-tail injury coverage allocation is appropriate because "[i]t is often 'virtually impossible' for an insured to prove what specific damage occurred during each of the multiple consecutive policy periods in a [long-tail injury case]."[107] This is not the case for the RNPS Claims, as each individual RNPS Claim alleges bodily injury that occurred at a specific time, from a specific cause (an RNPS product ).[108]

Mattel argues the RNPS Claims allege a "long-tail" injury, as the RNPS Claims allege mental anguish suffered by the parents of the injured or deceased babies and continuing indefinitely.[109] This is insufficient to invoke the "all-sums-with-stacking" allocation model. Mattel provides no caselaw which supports the application of the "all-sums-with-stacking" rule for a case alleging mental anguish.

Under Mattel's theory, the "all-sums-with-stacking" rule would apply to any personal injury case in which the claimant suffered a permanent injury or an injury

---

[105] *Continental*, 281 P.3d 1005.
[106] *Id*.
[107] *Id*. (citing William R. Hickman & Mary R. DeYoung, *Allocation of Environmental Cleanup Liability Between Successive Insurers*, 17 N. Ky. L. Rev. 291, 292 (1990)).
[108] *See Grimsley v. Mid-Century Ins. Co.*, 2011 WL 321004, at *18 (Cal. App. Feb. 2, 2011) ("We decline to apply Montrose 'continuous injury' analysis to a situation in which there is a single clearly defined injury causing event, with immediate and evident consequences.").
[109] Mattel MSJ at 30.

that would take several years to heal. This overbroad application of the rule exceeds the reasonable bounds of California's "all-sums-with-stacking" caselaw.

The mental anguish suffered by the parents of the injured or deceased babies is attributable to a concrete time and cause. Mental anguish is not a "long-tail" injury for which an "all-sums-with-stacking" allocation is appropriate. Mattel's desired coverage allocation model is not applicable to this case.

### 2. *Chubb's coverage model fails, as the OAE lacks a Deemer Clause.*

Chubb contends the RNPS Claims should be batched into 2013 for the Umbrella and Excess Policies.[110] Chubb argues evidence obtained during discovery should be admitted, and this evidence demonstrates an intent among the parties for the "[OAE and LBC] to operate consistently up the tower."[111] The Court will not rely on discovery evidence to interpret unambiguous Policy language. The OAE lacks a Deemer Clause, which prevents this Court from batching every claim into 2013 at the Umbrella and Excess Policy levels. The Court will not rewrite the policies at issue to insert a Deemer Clause into the OAE where one does not exist. Chubb's coverage model thus fails.

---

[110] Chubb MSJ at 23.
[111] *Id*. at 31 (cleaned up).

### 3. *Great American presents the proper coverage allocation under the terms of the Policies.*

The Umbrella Policies' Insuring Agreements provide that they apply to "'bodily injury'…[which] is caused by an 'occurrence'…[and which] occurs during the 'policy period.'"[112] The Excess Policies adopt this same Insuring Agreement.[113] Notably, while both "occurrence" and "occurs" appear in this definition, only "occurrence" is contained within quotation marks denoting a defined term under the Policy. "Occurs" should therefore be interpreted using its ordinary meaning, not based on the defined term, "occurrence."[114] Regardless of the number of "occurrences," the Umbrella and Excess Policies only cover bodily injuries that occur during their policy period.

The Parties agree that an "Occurrence," even a combined "Occurrence" under the LBC and OAE, is still a precondition to "bodily injury."[115] The Insuring Agreements direct the Court to determine when a bodily injury happens in order to determine whether a Policy's coverage is invoked. The existence of "bodily injury"

---

[112] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000827.

[113] *See, e.g.*, GA MSJ Ex. 134 at STARR00004318.

[114] *Waller*, 900 P.2d at 627 (citing Cal. Civ. Code § 1638, and then citing *Rsrv. Ins. Co. v. Pisciotta*, 640 P.2d 764, 767 (Cal. 1982).

[115] Mattel Resp. to Letter at 1 ("[Mattel] generally agree[s] with Great American that an 'occurrence' is a precondition to the associated bodily injury" (cleaned up))., Chubb Resp. to Letter at 1 ("Chubb agrees that an 'occurrence' is a precondition to 'bodily injury.'"), GA Resp. to Letter at 2 ("'Occurrence' is a precondition to bodily injury"). *See also* National Union Resp. to Letter at 1-2 ("This issue does not concern the PY2011 National Union umbrella policy…National Union therefore takes no position on this issue, nor on the interpretation of any of the Chubb umbrella policies.").

during a Policy's period triggers coverage, not the existence of an "occurrence." Even if the RNPS Claims are batched into a single "occurrence," an Umbrella or Excess Policy can only be triggered by a bodily injury which actually happened during a particular Policy's year. Claims for injuries that happened in 2013 invoke coverage under the 2013 Umbrella and Excess Policies, not those Policies for other years. The RNPS Claims must be allocated by policy year for the Umbrella and Excess Policies.

**D. Great American has a duty to defend Mattel for Claims allocated to 2013. Aspen and AGLIC may not, but the Court cannot declare this yet.**

Great American contends it has no duty to defend Mattel for Claims allocated to policy year 2013, since the 2013 Great American Policy disclaims the duty to defend.[116] Great American's 2013 policy provides "[Great American] will not be required to assume charge of the investigation of any claim or defense of any suit against you."[117]

Great American's Policy also contains a Following Form Coverage Endorsement, which provides that it follows form to the 2013 Chubb Umbrella Policy (which contains a duty to defend[118]) subject to nine items from Great American's Policy which supersede the terms of the Chubb Policy.[119] The list is

---

[116] GA MSJ 32.
[117] GA MSJ Ex. C at GAAC006893.
[118] JPA Ex. 19 at ACE-RNP00000829.
[119] GA MSJ Ex. C at GAAC006884.

devoid of the duty to defend disclaimer.[120]  The Follow Form Coverage Endorsement

thus defeats the duty to defend disclaimer.[121]  Great American holds a duty to defend

Mattel for claims allocated to policy year 2013.

AGLIC argues it has no duty to defend Mattel for 2013 claims.[122]  AGLIC's

2013 Policy follows the terms of the underlying Policy "[e]xcept as otherwise

provided by this policy."[123]  The 2013 AGLIC Policy disclaims any duty to defend.[124]

As provided in the Qualified Entity Endorsement, with respect to insured

entities that have ongoing operations in "non-admitted jurisdictions," "[AGLIC] will

not assume any duty with respect to the investigation, settlement or defense of any

claim made, suit brought or proceeding instituted against any insured *in non-

admitted jurisdictions*."[125]  This clause replaces the disclaimer of the duty to defend,

meaning the duty can exist for entities with ongoing operations in "non-admitted

jurisdictions."   "Non-admitted jurisdictions" is a defined term, meaning "any

country or political subdivision in which [AGLIC is] not authorized to insure risks

---

[120] *Id.*

[121] *See Certain Underwriters v. Engs Motor Truck Co.*, 135 Cal. App. 3d 831, 835 (1982) ("If there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls." (citing *Cont'l Cas. Co. v. Phoenix Const. Co.*, 269 P.2d 801, 805 (Cal. 1956))).

[122] AGLIC Joinder at 2.

[123] Dixon Aff. Ex. A at MAT-FP-DECOV0001243.

[124] *Id.* at MAT-FP-DECOV0001244.

[125] *Id.* at MAT-FP-DECOV0001255 (emphasis added).

and where doing so would violate the insurance laws and regulations of such jurisdiction."[126]

Mattel has ongoing operations outside of the United States,[127] meaning the duty to defend may apply, but the record does not identify in which jurisdictions AGLIC is or is not authorized to insure risks. If AGLIC was authorized, at the time of the 2013 AGLIC Policy, to insure risks in every jurisdiction in which Mattel has ongoing operations, the Qualified Entity Endorsement would not apply to Mattel, and AGLIC would have no duty to defend Mattel. This issue must be resolved under a more complete record.

Aspen's 2013 Policy contains the Restrictive as Underlying Clause, providing that "Any restrictive policy terms and/or conditions that apply to the underlying [Excess Policies]…will also apply to this policy, unless amended by Endorsement."[128] Aspen invokes the Restrictive as Underlying Clause to argue that, if the duty to defend does not exist under the AGLIC and Great American Policies sitting under Aspen's 2013 Excess Policy, Aspen also lacks such a duty with respect to claims allocated to policy year 2013.[129]

---

[126] *Id*. at MAT-FP-DECOV0001256.
[127] Mattel Suppl. Resp. to AGLIC at 4.
[128] Aspen MSJ Ex. A at AONMATTEL-0002033.
[129] Aspen MSJ at 5. Mattel argues the Restrictive as Underlying Clause only applies to "the scope of coverage and/or exclusions from coverage, *not whether there is a defense obligation*." Mattel's Opp. to Great American and Aspen's Respective Mots. for Partial Summ. J. at 34 (D.I. 614) (emphasis supplied). The Restrictive as Underlying Clause is not so limited. By its plain terms,

27

Great American has a duty to defend for claims allocated to 2013, but it remains unclear if AGLIC has such a duty. If AGLIC lacks a duty to defend, Aspen's policy will absorb that same restriction. Because a genuine issue of material fact exists as to AGLIC's duty to defend, the same issue of fact prevents a resolution of the issue presented in Aspen's Motion.

**E. The Court reserves decision on the Corridor Retention and Trailing Retention issues as well as the issues surrounding National Union's 2011 Umbrella Policy.**

With trial scheduled for June 2025, the Court desired to give the Parties an early decision on the coverage allocation, number of occurrences, and duty to defend issues. The Court directs the Parties to meet and confer regarding the remaining issues, such as those surrounding the Corridor Retention Endorsement, Trailing Retention Endorsement, and whether National Union's Policy incorporates the LBC by April 25, 2025.[130] If the Parties are unable to resolve the remaining issues, the Court will resolve them in a separate decision.

## VI.    CONCLUSION

Great American's Motion for Partial Summary Judgment is **GRANTED** in part, **DENIED** in part, and **RESERVED** in part. Aspen's Motion for Partial Summary Judgment is **DENIED**. Mattel's Motion for Summary Judgment is

---

the Restrictive as Underlying Clause adopts "terms," not exclusions or a scope of coverage. A limit on the duty to defend is a "term" which this Restrictive as Underlying Clause may adopt.
[130] The Parties shall jointly inform the Court, by letter, of the issues remaining on April 25, 2025.

**GRANTED** in part, **DENIED** in part, and **RESERVED** in part.  National Union's Motion for Summary Judgment is **RESERVED**.  Chubb's Motion for Summary Judgment is **GRANTED** in part, **DENIED** in part, and **RESERVED** in part.  The Insurers' joinders are resolved or reserved accordingly.  Specifically, the Court declares the RNPS Claims constitute a single "occurrence" under the Policies, that the RNPS Claims should be allocated by the year in which the injury occurred for the Umbrella and Excess Policies, and that Great American has a duty to defend Mattel for claims allocated to 2013.  The Court reserves decision on the Corridor Retention, Trailing Retention, and National Union PCOH Endorsement issues.

IT IS SO ORDERED.

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**